IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:13-cr-436 |
| | ) | |
| SAMUEL GOINES | ) | Honorable Liam O'Grady |
| a/k/a "Glenn Council" | ) | |
| a/k/a "Samuel Goins" | ) | Sentencing: March 14, 2014 |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES ON SENTENCING**

On December 13, 2013, defendant Samuel Goines pleaded guilty to Count One of the

Indictment in this case, charging him with conspiracy to commit bank fraud, in violation of 18

U.S.C. § 1349, and Count Seventeen, charging him with obstruction of justice, in violation of 18

U.S.C. § 1512(c).  These convictions, which are but the latest in this defendant's lengthy

criminal history, stem from his role as a "runner" in a multi-year bank fraud scheme.  The

defendant engaged in the bank fraud conspiracy while on supervision from multiple courts, and

even while on electronic monitoring.  Following his arrest, he obstructed of justice by tipping off

a co-conspirator about the investigation in a prison telephone call.

The Probation Officer determined that the defendant's total offense level on Count One

was 23.  See Final Presentence Investigation Report ("PSR") at Worksheet A (Doc. 25).

Because of the vagaries of the grouping rules, he received no enhancement to his guideline level

from his obstruction of justice conviction, even though he would have received a two-level

enhancement for the same conduct if he had not been charged with obstruction as a separate

offense.  See id. at Worksheet B; U.S.S.G. § 3C1.1.  After a three level reduction for timely

acceptance of responsibility,[1] his total offense level comes out to 20.

The only objection before this Court is to the defendant's criminal history.  The Probation

Officer calculated it at category VI; the defendant maintains it should be a category V.  The

particular point of dispute appears to be an open issue in the Fourth Circuit.  While the issue is a

close one, the government recommends on the specific facts at issue here that this Court deny the

objection and calculate the defendant's criminal history at criminal history category VI.  At such

category, the defendant's guideline range would be 70 to 87 months.

For the reasons set forth herein, the government recommends that the Court sentence the

defendant within the applicable guideline range.  Such a sentence would be sufficient, and not

greater than necessary, to accomplish the sentencing objectives identified in 18 U.S.C. § 3553(a).

Finally, the government asks the Court to impose restitution and forfeiture, and will present

proposed restitution and forfeiture orders for the Court's consideration at sentencing.

## I.     BACKGROUND

By his own admission, the defendant participated in the bank fraud conspiracy from at

least October 2011 through September 2013.  See Statement of Facts ("SOF") ¶2 (Doc. 21).  He

and his co-conspirators opened bank accounts at federally insured banks in the names of various

businesses, deposited stolen and counterfeit checks and caused unauthorized wire transfers into

those accounts, and cashed checks written against the accounts using false identifications.  See

id. ¶3.

---

[1] If the Court determines that the defendant has accepted responsibility, the United States moves
the Court to adjust the defendant's offense level downward by three levels pursuant to U.S.S.G.
§ 3E1.1(b) for timely notifying the government of his intention to plead guilty.

The Statement of facts details two instances where the defendant and his co-conspirators went through this pattern of conduct: one involving an account opening and withdrawals at SunTrust Bank in June 2013, see id. ¶4.a.-e., and another involving an account opening and withdrawals at a TD Bank in September 2013, see id. ¶4.f.-i.  In both instances, the defendant cashed checks written against the fraud bank accounts, often visiting multiple branches of the same bank on the same day and assuming a different identity in each branch.  See id.  The defendant was caught on bank surveillance in many of these and other similar instances.  At the time of the TD Bank conduct, he was also subject to electronic monitoring by order of the D.C. Superior Court.  Such monitoring confirmed his travel pattern and visitation of seven different TD branch banks over the course of two days.

In total, the defendant's conduct and the reasonably-foreseeable conduct of his co-conspirators caused $539,187.36 in actual losses.  See id. ¶5; PSR ¶30.  All these losses related to bank accounts that the defendant either opened or made withdrawals from, or both.

The defendant was arrested on October 9, 2013, and after receiving Miranda warnings, agreed to be interviewed by federal agents.  During the interview, he was shown images of suspected co-conspirators, including an individual know to him as "T."  See SOF ¶7.  The day after his arrest, the defendant called "T" from the Alexandria Detention center and told him about the arrest.  The defendant warned "T" that authorities had discovered both the SunTrust and the TD Bank conduct, and that authorities had an image of "T" but did not know his name. The defendant instructed "T" to "change your phone number," "get new stuff," and "set up everything new."  Id. ¶8.

3

## II.    THE APPROPRIATE GUIDELINE RANGE

The parties and the Probation Officer largely agree as to the applicable guidelines in this case.  In particular, the parties and the Probation Officer agree that the base offense level for Count One pursuant to U.S.S.G. § 2B1.1 is seven, that a 14-level enhancement applies for intended loss amount in excess of $400,000, and that a 2-level enhancement applies for use of authentication features on the false identifications that the defendant presented when opening bank accounts and cashing checks. See Plea Agreement ¶4 (Doc. 20); PSR at Worksheet A.  The parties and the Probation Officer also agree that no enhancement to this base offense level results from the grouping of Count Seventeen, even though the defendant would have been assessed a two-level enhancement had he simply been charged with bank fraud conspiracy and assessed an obstruction enhancement pursuant to U.S.S.G. § 3C1.1.  See PSR at Worksheet B.

The defendant's guideline range also does not reflect several additional enhancements that the government considered pursuing in this case.  These include enhancements for victim count (based on the individuals whose names were used on the false identifications) and sophisticated means (based on the fact that the co-conspirators established intermediary layers in the fraud through acts such as the establishment of limited liability companies associated with the fraud accounts).  The government elected not to pursue these enhancements against this defendant because he served primarily as a "runner"—that is, the person who goes into the banks to pose as another and make deposits or withdrawals—and the government could not prove at the time of the plea that the defendant knew that his co-conspirators were using identities of real people or were using sophisticated means in setting up the fraud.

4

The Probation Officer assessed the defendant's criminal history at category VI.  This assessment was based, in part, on assigning one criminal history point for defendant's conviction in March 2013 for destruction of property less than $200.  PSR at Worksheet C.  The defense argues that destruction of property is similar to the offense of disorderly conduct, which is assigned no points under U.S.S.G. § 4A1.2(c).  The defense relies on a case from the Seventh Circuits holding that destruction of property was akin to disorderly conduct.  See United States v. Booker, 71 F.3d 685, 690 (7th Cir. 1995).  The defense also cites cases from the Fifth and Ninth Circuits holding that "criminal mischief" convictions involving destruction of property were akin to disturbing the peace.  See United States v. Grob, 625 F.3d 1209, 1218 (9th Cir. 2010); United States v. Reyes-Maya, 305 F.3d 362, 366-67 (5th Cir. 2002).  The Fourth Circuit does not appear to have ruled on these issues.

An application note to Section 4A1.2 provides that:

> In determining whether an unlisted offense is similar to an offense listed in subsection (c)(1) or (c)(2), the court should use a common sense approach that includes consideration of relevant factors such as (i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

U.S.S.G. § 4A1.2, Application Note 12(A).  Here, the Probation Officer reasoned that disorderly conduct implicates minimal penalties such as fines and court costs and involves nuisance-type behavior in areas open to the general public.  By contrast, the Probation Officer reasoned that destruction of property carried higher possible penalties and involved pecuniary harm through the destruction of another person's property.  Thus, the Probation Officer disagreed with the objection.  See PSR at Addendum A-1.

The government agrees with the Probation Officer's conclusion that destruction of property generally is more serious than disturbing the peace and should be counted in determining a defendant's criminal history.  However, the cases cited by the defense indicate that courts may examine the particular circumstances of an underlying conviction in determining whether it is comparable to disturbing the peace.  For instance, the Seventh Circuit in Booker did not categorically hold that destruction of property was akin to disturbing the peace; rather, the Court held made a case-specific ruling based on the circumstances of the conviction there at issue.  See Booker, 71 F.3d at 690 (holding that "destruction of property is a serious matter" but that "[i]t is clear, however, that the act involved here was a single incident of breaking the glass in the door of his paramour's home. There is no claim that it was part of a breaking and entering or other serious crime," and that "we think it revealing that the sentencing court imposed no period of incarceration or probation but, in its discretion, limited the entire sentence to a month's supervision").  The reference in Application Note 12(A) to "the perceived seriousness of the offense as indicated by the level of punishment," the defendant's "level of culpability," and "the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct" as factors in the analysis is consistent with such a fact-specific approach.

Here, the facts underlying the defendant's conviction for destruction of property are more serious that the facts at issue in Booker.  See PSR ¶49 (describing that the defendant banged on the victims door demanding money that he believed she had stolen from him, that she was scared to open the door, and that he broke and entered into the apartment).  Moreover, the defendant was sentenced to a year of probation and a suspended sentence of 100 days in jail, and was ordered not to harass, assault, threaten, or stalk the victim.  See id.  While the issue is a close

one, the government submits that these differences sufficiently distinguish this case from the facts in the Seventh Circuit's <u>Booker</u> opinion to warrant the imposition of a criminal history point.  Accordingly, the government respectfully recommends that the Court deny the objection and assess the defendant's criminal history at category VI.

## III.    OTHER SENTENCING FACTORS

In addition to considering the properly calculated sentencing guideline range, this Court should also consider other factors identified in 18 U.S.C. § 3553(a).  The government will address the most pertinent of those factors below.

<u>Nature and Circumstances of the Offenses (18 U.S.C. § 3553(a)(1))</u>

The defendant engaged in bank fraud conspiracy for almost two years.  While not a leader or organizer in the scheme, he was an important participant, as reflected by the loss amount associated with accounts that he helped to establish and draw upon.  His conduct led to more than $500,000 in actual losses to federally insured banks and other victim entities.  The defendant and continued to participate in the conspiracy while he was on Court supervision and even while on electronic monitoring.

In addition, the defendant obstructed justice in tipping off a co-conspirator to the investigation.  Because of the way in which the grouping rules assessed the obstruction count in this case, the defendant's applicable guideline range was not affected by his obstruction.  The government submits that this Court should allot some weight to the obstruction as part of the nature and circumstances of the offense, and should impose a slightly higher sentence than it would have if the defendant had not engaged in obstruction.

<u>History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))</u>

The defendant is a 61 year old male with some college education.  He has at least ten prior adult criminal convictions, including multiple grand theft/grand larceny convictions, a mail fraud conviction, and an identity theft conviction.  He has served prison sentences in excess of a year on at least two occasions, including most recently for identity theft, for which he was released in March 2011.  He appears to have joined the instant conspiracy shortly thereafter.

The defendant has an extensive history of substance abuse.  <u>See</u> PSR ¶¶87-96.  His need to fund his substance abuse likely contributed to his participation in the bank fraud conspiracy.

<u>General and Specific Deterrence (18 U.S.C. § 3553(a)(2))</u>

The defendant is plainly in need of specific deterrence.  So long as his substance abuse problems persist, it is hard to imagine that he will be able to avoid further criminal conduct.  Moreover, the defendant's recent history demonstrates that he will not be deterred from committing additional crimes while on supervised release.

The Court's sentence should also provide general deterrence to other fraudsters and emphasize the seriousness of the conduct at issue.

<u>Avoiding Unwarranted Sentencing Disparities (18 U.S.C. § 3553(a)(6))</u>

The defendant is the first co-conspirator to be charged and convicted in this matter.  Just days ago, the government arrested the co-conspirator whom the defendant knew as "T."  The government anticipates that T and other co-conspirators may face additional charges and additional enhancements beyond those at issue for this defendant because of their relative roles in the conspiracy.

8

**IV.     CONCLUSION**

For the reasons stated, the government asks the Court to find that the PSR correctly determined the applicable guidelines, resulting in an advisory sentencing guideline range of 70 to 87 months.  Further, the government recommends that the Court sentence the defendant within the applicable guideline range.  The government submits that such a sentence is sufficient and not longer than necessary to accomplish the sentencing objectives identified in 18 U.S.C. § 3553(a).  Finally, the government asks the Court to impose forfeiture and restitution, and will present proposed forfeiture and restitution orders for the Court's consideration at sentencing.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By: _____/s/_____
Kosta S. Stojilkovic
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel:  (703) 299-3700
Fax:  (703) 299-3981
kosta.stojilkovic@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 7, 2014, I will file the foregoing pleading with the Clerk of the Court, who will then send a notification of such filing (NEF) to the following:

                    Geremy C. Kamens
                    Federal Public Defender's Office
                    Alexandria, Virginia

                              _____/s/_____
                    Kosta S. Stojilkovic
                    Counsel for the United States
                    United States Attorney's Office
                    2100 Jamieson Avenue
                    Alexandria, Virginia 22314